**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CRUZ, | 1:06-cv-00759-LJO-GSA (PC) |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| SCHWARZENEGGER, et. al., | (Doc. 13) |
| Defendants. | |

**I.   SCREENING ORDER**

Brian Cruz ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on June 15, 2006. Before to the Court screened the original complaint, Plaintiff filed a first amended complaint on July 11, 2006.

**A.   Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been

paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

**B.     Summary of Plaintiff's First Amended Complaint**

Plaintiff is a state prisoner, currently incarcerated at the Richard J. Donavan Correctional Facility in San Diego, California.  Plaintiff complains of acts which occurred at both Pleasant Valley State Prison ("PVSP") and Mule Creek State Prison ("MCSP").

Plaintiff names the following defendants: Governor A. Schwarzenegger; Secretary of the Department of Corrections R.Q. Hickman; PVSP personnel – Warden J. Yates, Associate Warden J. Mattingly, A Facility Captain E. Beels, CCII H. Allison, CCI Silva, CDW S. Garcia, C&PR J. Gonzales; MCSP personnel – Warden R. Campbell, Associate Warden M. Bunnell, Captain T.J. Steel, Lieutenant M. Cherry, CCII Laituri, C&PR B. Moak; and LEIU Assistant Director R. Rimmer.

Plaintiff alleges that: in August of 2005, while incarcerated at MCSP, he began cooperating in an investigation regarding Islamic extremists both within the CDCR and on the streets; Plaintiff was promised placement in the protective housing unit ("PHU") in exchange for his cooperation in the investigation as it was known that, because of his Muslim religious beliefs, Plaintiff's cooperation in the investigation, if not kept completely confidential, would cause Plaintiff to be viewed as a traitor within the Islamic inmate community; subsequent to erroneous

2

double-celling of Plaintiff by MCSP staff, the confidentiality of Plaintiff's cooperation was compromised and Plaintiff's life became in danger; staff at MCSP failed to protect Plaintiff by placing him in PHU; MCSP staff determined that Plaintiff should be transferred to CSATF or Salinas Valley SP; thereafter, Plaintiff was transferred to PVSP where known Islamic enemies of his were housed and in line for transfer; upon arrival at PVSP, he was placed in the A Facility where his known enemy already resided; and PVSP personnel subsequently placed additional known enemies of Plaintiff's in various cells near Plaintiff's. Plaintiff's requests for further transfer and/or PHU placement have been denied or otherwise ignored. Plaintiff alleges that the events above have caused him extreme mental anguish and fear for his life.

Plaintiff seeks a variety of forms of relief including monetary damages, declaratory relief, and injunctive relief in the form of transfer to the PHU in Corcoran, California.

### C. Pleading Requirements

#### 1. *Federal Rule of Civil Procedure 8(a)*

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490

U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

### 2. *Federal Rule of Civil Procedure 18*

"The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is advised that if he chooses to file an amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

### 3. *Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

4

constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights. Plaintiff fails to state any factual allegations against PVSP Warden J. Yates. However, the Court grants Plaintiff opportunity to file a second amended complaint wherein Plaintiff may be able to state a claim against PVSP Warden J. Yates.

### D.   Claims for Relief

#### 1. *Failure to Protect*

Plaintiff's claims are all generally based on the premise of prison personnel failing to protect him by not placing him in the PHU – despite his cooperation in an investigation which was not kept confidential which compromised his safety.

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray 682 F.2d 1237, 1250-51 (9th Cir. 1982); see also Farmer v. Brennan 511 U.S. 825, 833 (1994).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prison must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

The Ninth Circuit has also held that allegations that prison officials called a prisoner a "snitch" in the presence of other inmates were sufficient to state a claim of deliberate

indifference to an inmate's safety.  See <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1139 (9th Cir. 1989).

While housed at MCSP, Plaintiff alleges that he cooperated in an investigation regarding Islamic extremists both within CDCR and on the streets.  Plaintiff alleges that the confidentiality of his involvement was compromised during one incident when he was double celled and that his life has been in danger ever since – necessitating PHU placement, which he has yet to receive.

While detailed allegations are not required, a plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations and citations omitted).

Plaintiff does not allege that he has incurred any harm, or that he has been threatened in any way.  Further, Plaintiff alleges that he was in MCSP's administrative segregation when he began cooperating in the investigation, and does not indicate that subsequent to his cooperation he was ever placed in the general population (at MCSP or PVSP), or in an unprotected environment.  Plaintiff alleges that PHU placement is the only safe place for him to program. Yet, Plaintiff fails to allege any circumstance of Ad Seg/SHU placement that would cause him to be unsafe.  Plaintiff further fails to state any factual allegations to show that his safety was compromised or when he was somehow vulnerable to attack from other inmates at MCSP and/or PVSP.  Thus, Plaintiff fails to state a cognizable claim regarding his safety and failure of prison personnel to provide for his safety.

### 2. *Procedural Due Process*

Plaintiff's second claim alleges that he was denied his right to be free from "atypical, punitive segregation" without due process of law, that he continues to be at risk, and so remains segregated in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a

liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. <u>See</u> <u>Hewitt</u>, 459 U.S. at 466-68. With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. <u>Sandin v. Conner</u>, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id</u>. at 484.

Plaintiff is not entitled to procedural due process protections in a vacuum. In order to be entitled under federal law to any procedural due process protections, plaintiff must first have a liberty interest at stake. Plaintiff has alleged no facts that establish the existence of a liberty interest in remaining free from Ad-Seg. <u>Id</u>.; <u>see</u> <u>also</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted). Because plaintiff has not established the existence of a liberty interest in remaining free from Ad-Seg, plaintiff may not pursue a claim for relief under section 1983 for deprivation of procedural due process.

Further, even if plaintiff had a liberty interest in not being retained in Ad-Seg, plaintiff has alleged no facts that support his claim he was deprived of the procedural due process protections he was due. Once again, Plaintiff's allegations that he was placed in Ad-Seg without due process are nothing more than more than ". . . labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." which is insufficient to state a cognizable cause of action. See <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. at 1964-65.

Plaintiff does not make any allegations regarding the due process he received relating to his initial placement in MCSP's Ad-Seg. Subsequent to the compromising of the confidentiality of his cooperation in the investigation, Plaintiff was retained in Ad-Seg for his own safety – apparently at his own behest. It is inapposite for Plaintiff to make one claim that his safety was jeopardized and that prison personnel failed to protect him by retaining him in Ad-Seg, rather than PHU, despite repeatedly voicing concerns over his safety, and in a subsequent claim to allege that he was retained in Ad-Seg without procedural due process. Further, Plaintiff's allegations that he repeatedly expressed concerns over his safety justifies his retention in Ad-Seg while PHU placement was being considered and subsequent to its denial.

In summary, because he does not have a liberty interest in remaining free from Ad-Seg, Plaintiff was not entitled to any procedural due process protections, and may not, therefore, pursue a claim for deprivation of procedural due process. Further, while Plaintiff states that he was denied his right to be free from atypical punitive segregation, he does not allege that conditions of confinement in the PHU would have been any different from the conditions of his confinement in Ad-Seg.

Accordingly, the Court recommends that Plaintiff's due process claim be dismissed from this action for failure to state a claim upon which relief may be granted.

### 3. *Transfer*

Plaintiff alleges that he should have been transferred to "C-SATF or SVSP." (Doc. 13, pg. 12.) However, Plaintiff is advised that prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another. Meachum v. Fano, 427 U.S. 215, 224-25 (1976).

### 4. *Supervisorial Liability*

Plaintiff names numerous defendants in this action that appear to qualify as supervisory personnel.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must

be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

As discussed herein above, Plaintiff fails to state a cognizable claims against any of the named defendants. Plaintiff is reminded that, if he chooses to file a second amended complaint, in order to state a cognizable claim, he must allege that supervisory personnel either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646; and Taylor, 880 F.2d at 1045.

## II.   CONCLUSION

For the reasons set forth above, plaintiff's first amended complaint is dismissed, with leave to file a second amended complaint within thirty days. If plaintiff needs an extension of time to comply with this order, plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423

U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff is advised that it is inappropriate to attach exhibits to a complaint. See Rule 8, Federal Rules of Civil Procedure. Further, the Court cannot serve as a repository for the parties' evidence. Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the court). At this point, the submission of evidence is premature as the plaintiff is only required to state a prima facie claim for relief. Thus, in amending his complaint, plaintiff should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Finally, plaintiff is advised that Local Rule 15-220 requires that a second amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff must file a second amended complaint curing the deficiencies identified by the court in this order, or
4. If plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:   **May 28, 2008**                       **/s/ Gary S. Austin**
                                             UNITED STATES MAGISTRATE JUDGE